ELLIS L. BIERBOWER V. JOHN F. MILLER.

[FILED SEPTEMBER 16, 1890.]

**Removal of Causes:** LOCAL PREJUDICE: AMOUNT IN CONTRO-
VERSY. The right of a non-resident defendant to remove a suit
from any state court to the circuit court of the United States,
upon the ground that from prejudice or local influence he will
not be able to obtain justice in such state court, etc., is confined
to cases in which the matter in dispute exceeds, exclusive of in-
terest and costs, the sum or value of two thousand dollars.

ERROR to the district court for Lancaster county. Tried
below before CHAPMAN, J.

*Montgomery & Jeffrey,* for plaintiffs in error:

The application for removal was properly made to the
federal court. (*Fisk v. Henarie,* 32 Fed. Rep., 422; *Ma-
lone v. R. Co.,* 35 Id., 628; *Kaitel v. Wylie,* 38 Id., 865.)
The right to remove accrues to any non-resident defendant,
when there is a controversy between him and a citizen of a
state where suit is brought (*Fisk v. Henarie, supra*); and
the right is not confined to cases where the controversy is
separable (*Whelan v. R. Co.,* 35 Fed. Rep., 849.)

*G. M. Lambertson, contra:*

The cause was not removable under the act of 1887, be-
cause (1) intervenors cannot remove when the state court
alone had jurisdiction at the commencement of the action
(*Ohlquist v. Farwell,* 13 Fed. Rep., 305; *Allin v. Robinson,*
1 Dill. [U. S. C. C.], 119, and citations; *Houston, etc., R.
Co. v. Shirley,* 111 U. S., 358; *Cable v. Ellis,* 110 Id., 396;
*Thorn, etc., Co. v. Fuller,* 122 Id., 535; *Phelps v. Oaks,* 117
Id., 236; *Stewart v. Dunham,* 115 Id., 64; *Bronson v.
Lumber Co.,* 35 Fed. Rep., 634); (2) not all defendants
are non-residents, nor did all join in the application for

removal (*Sewing Machine Cases*, 18 Wall. [U. S.], 553; *Vannevar v. Bryant*, 21 Id., 41 ; *Hancock v. Holbrook*, 119 U. S., 586); (3) it could not have been commenced originally in the circuit court (*McNeil Co. v. Howland*, 99 N. Car., 202 [6 Am. St. Rep., 513]; *King v. Cornell*, 106 U. S., 395; *Smith v. Lyon*, 133 Id., 315; *Malone v. R. Co.*, 35 Fed. Rep., 625) ; (4) the amount is less than $2,000 (*Malone v. R. Co.*, *supra*). The interests of defendants in such actions are not severable (*Louisville R. Co. v. Ide*, 114 U. S., 52; *Putnam v. Ingraham*, Id., 57; *Pirie v. Tvedt*, 115 U. S., 41; *Sloane v. Anderson*, 117 Id., 275; *Thorn, etc., Co. v. Fuller*, 122 Id., 535.)

COBB, CH. J.

The plaintiff in the court below alleged that on November 11, 1886, he was the owner and in possession of a general stock of goods and merchandise in Deloit, Holt county, consisting of dry goods, clothing, hats and caps, boots and shoes, hardware, groceries, fruits and candies, powder and shot, paints and varnishes, trunks, and such other goods as are kept in a country store, also counters, show cases, lamps, and other fixtures, with books and book accounts, in all of the value of $3,200, as per schedule attached, Exhibit A; that on said day Ellis L. Bierbower, who is made defendant, wrongfully, forcibly, and unlawfully took said goods from the possession of the plaintiff and converted them to his own use, to the plaintiff's damage $3,250.

II. And for a second cause of action alleged that on said day he was engaged in a large and profitable retail business of buying and selling general merchandise at Deloit, Holt county, and was the owner and in possession of the goods and stock of merchandise hereinbefore mentioned.

That on said day the defendant forcibly, wrongfully, and unlawfully took possession of all of said goods and chattels, and converted them to his own use.

III. That prior to said day the plaintiff had borne a good character as a merchant, and was in good financial credit and standing.

IV. That by the wrongful acts of the defendant in taking possession of said goods and converting them to his own use the plaintiff has been greatly injured in his good name, credit, and business standing insomuch that various merchants and persons who formerly dealt with him have ceased to do so, and he is no longer able to buy goods on credit of foreign merchants as he was formerly accustomed to do, whereby he has lost gains which otherwise would have accrued in his business; that by said wrongful acts his business has been broken up and destroyed by the defendant, to the damage of the plaintiff $3,250, of which there has been paid $1,287, leaving a balance due of $1,963, with interest at seven per cent per annum from November 11, 1886, for which he asks judgment.

The defendant made his special appearance in the suit for the purpose of objecting to the sufficiency of the service of the summons, and to the jurisdiction of the court over his person, for the reason:

"That he is a resident of Douglas county, and was at the time of the service of the summons, and now is, and long had been marshal of the United States circuit and district courts for this state, and as such was under an order in pursuance of the duties of his office, and was required to be in attendance upon the sessions of the January term, 1888, of said circuit and district courts, by law held at Lincoln, in Lancaster county, at the time of the service of the summons upon him, and that the pretended service of the same upon him was while he was so in the discharge of his official duties at and in Lancaster county, in attendance upon said courts as required by law, and is wholly void, and he should not be further required to answer or obey said summons."

On April 20, 1888, at the February term of the court

below, the motion to quash the service of summons on defendant was heard and argued and was overruled, to which the defendant excepted on the record.

On June 9, 1888, at the May term of the court below, the motion of William Groneweg and John Schoentgen for leave to intervene as parties defendant was heard and argued and was sustained; and for answer to the plaintiff's petition they state:

"That they deny each and every allegation in the petition contained.

"Count II. They admit that on November 11, 1886, they directed the United States marshal to levy upon a certain stock of merchandise in the town of Deloit, Nebraska, the taking of which is the seizure complained of, but whether Exhibit A is a correct list of the property taken defendants are unable to say, but deny the same and leave plaintiff to his proof. They allege that plaintiff's claim to the property is based upon a pretended purchase made from D. L. Cramer and D. V. Coe, or one of them, without consideration and with the purpose and intent on the part of all of them to hinder, delay, and defraud these defendants and other creditors of Cramer and Coe, who were at the time of said pretended sale greatly embarrassed financially, and unable to meet their obligations, and were insolvent, all of which was then well known to the plaintiff, by reason of which defendants allege the plaintiff's claim is fraudulent and he cannot recover.

"Count III. For further answer defendants aver that on November —, 1886, they commenced their action in the circuit court of the United States for the district of Nebraska, claiming of D. L. Cramer and D. V. Coe $1,800, upon certain promissory notes of theirs, in pursuance of which a writ of attachment was issued and levied upon the property as stated in count II of this answer; that on December 4, 1886, the plaintiff herein filed in said cause in said circuit court his petition as follows:

"'Comes now John F. Miller, as intervenor, and informs this court and avers that the property attached herein belongs to him, and so belonged at the time it was seized and levied upon by virtue of the order of attachment herein, and at the time of making said levy said property was in the possession of said intervenor in the county of Holt, in this state, and was wrongfully, unlawfully, and forcibly taken from his possession without his consent.

"'II. Since the taking of said property from his possession he has demanded of the marshal a return of the same, and said marshal has refused to return or in any manner account for the same.  He prays that said attached property be returned to him and that he have judgment for his costs.'

"That on February 23, 1887, at a term of the United States circuit court, then being held at Lincoln, the plaintiff's claim was tried and submitted to a jury, upon which was the following verdict:

"'GRONEWEG AND SCHOENTGEN,
         V.
D. L. CRAMER ET AL., DEFENDANTS,
JOHN F. MILLER, INTERVENOR.

"'We, the jury, find that at the time of the taking of the property herein attached, the title to the property, and the possession of the same was in the intervenor, John F. Miller, and was then of the value of $2,800, and the price at which the same was sold by the marshal was $1,260.'

"The plaintiff thereupon elected to take, and did take and receive from the United States marshal the amount in his hands realized by the sale of said attached property, which is the sum of $1,287, mentioned in the second count of plaintiff's petition.

"And defendants allege that all the claim of the plaintiff against them, arising out of said attachment, was fully adjudicated and settled in said intervening proceedings, and plaintiff cannot now relitigate the same."

On June 29, 1888, at said May term of the court below, leave was given defendant Bierbower to answer instanter and answer was filed as follows:

"The said defendant says that in whatever he did in the premises he did in his capacity of United States marshal, under the direction of Groneweg and Schoentgen, and has no interest in the controversy; that said defendants are wholly responsible, if anybody, for whatever damage, if any, was sustained by plaintiff on account of said levy and seizure and attachment complained of. Defendant denies each and every allegation in said petition contained."

The plaintiff replied to the respective answers of defendants, denying each and every allegation therein contained not expressly admitted.

"II. He admits that he purchased the property levied on by defendant Bierbower at the instance of the other defendants, but denies that the same was made with any fraudulent intent, or with intent to defraud Groneweg or Schoentgen, or any of the creditors of the vendor. On the other hand, such purchase was *bona fide* and for a valuable consideration. He denies that Cramer and Coe were financially embarrassed and that he had full knowledge of that fact at the time he made the purchase.

"III. He admits the allegations in the third count of the answer respecting the intervention of the plaintiff in a suit in the circuit court of the United States by Groenweg and Schoentgen against Cramer and Coe, being that in which the attachment was issued, except the plaintiff's rights were absolutely concluded in that proceeding, and by the decree of that court they were barred from prosecuting this action. Plaintiff denies that his intervention in this action and the proceedings and judgment that followed are a bar to the proceedings of this action. On the other hand plaintiff avers that by the verdict and judgment of the circuit court, the title and ownership of the property in question were conclusively found to be in him,

and the defendants are thereby barred and estopped from setting up the defense and claim that the plaintiff is not the owner of the property in question, or that the sale to him was a fraudulent one, as all those matters were put in issue by the answer of the defendants filed therein in reply to intervenor's petition as follows:

"'GRONEWEG AND SCHOENTGEN, PLAINTIFFS,
     v.
CRAMER AND COE, DEFENDANTS, AND
JOHN F. MILLER, INTERVENOR.

" 'They admit that at the time of the levy, said intervenor was in the possession of the property attached, and that the marshal refused to return to him the property taken, and they deny every other allegation in his petition contained.

"' II. Plaintiffs allege that they are informed and believe and charge that the intervenor claims the title to said property by virtue of a pretended sale thereof, made by D. V. Coe, and plaintiffs allege that said pretended sale is void for the reason that the same was without consideration; that at the time said Coe was largely indebted to plaintiffs and other creditors, of which the intervenor had notice; that said pretended sale was made with the fraudulent purpose and intent to hinder, delay, and defraud the creditors of said Coe, in collecting their claims against him, and said conveyance was received by the said intervenor with the fraudulent intent and purpose to assist Coe in hindering, delaying, and defrauding his creditors.

"' III. Plaintiffs further say that they are informed and believe and charge that at the time of the said pretended sale of the said property there was no delivery thereof, nor did said intervenor take possession until a long time thereafter, nor was any instrument conveying said property, nor copy thereof, filed in the office of the county clerk of O'Neill county, where said Coe then resided, and by reason of such fact the pretended conveyance is absolutely void by force

of the statute in such cases, and no rights in or to said attached property accrued to said intervenor thereunder.'

"The plaintiffs aver that while the title to the property in question was adjudged in that proceeding to be in the plaintiffs, yet the court by its final judgment simply ordered the payment of the amount realized at the marshal's sale, instead of the full value of the goods found by the jury, and expressly reserved to these plaintiffs in said judgment the right to prosecute this action against the defendant for the full damages occasioned by the levy of the attachment, as appears by the judgment of the circuit court of the United States for the district of Nebraska as follows:

"'GRONEWEG AND SCHOENTGEN
                v.
CRAMER AND COE, DEFENDANTS, AND
JOHN F. MILLER, INTERVENOR.

"'This cause was heard on the motion for a new trial and in arrest of judgment, and the motion of the intervenor to correct the judgment entered in this action, and it is ordered and adjudged that the marshal and clerk pay over to the intervenor the amount of money now in their hands realized upon the sale of the goods and property claimed by the said intervenor, to-wit, the sum of $1,289.34, and seized by the marshal by virtue of a writ of attachment issued in this cause.

"'This order to be without prejudice to the rights of John F. Miller to bring suit against the marshal or the plaintiffs for the recovery of damages caused by the illegal seizure and detention of the goods and property seized under said writ of attachment, and for the recovery of the full value of the same.

"'It is further adjudged that the intervenor recover the costs of his intervention herein, and that the plaintiffs pay all costs of the seizure and sale of the goods and property levied upon by the marshal under the writ of attachment and now adjudged to be the property of the intervenor.

It is ordered that the motion for a new trial and arrest of judgment be overruled.'

" Wherefore plaintiff asks that the prayer of the petition be granted, and judgment be allowed for the amount prayed for therein.

"STIPULATION OF THE PARTIES IN THE COURT BELOW. FILED NOVEMBER 22, 1888.

" It is hereby stipulated that this case shall not be tried before December 15, 1888, and not then except by agreement of parties, and in consideration the defendants agree that they will make no application to remove the cause to the federal court, but that the same shall be tried in this court.

" It is further stipulated that the original files marked by the clerk of the circuit court of the United States, in the cause of Groneweg and Schoentgen against Cramer et al., including the petition of intervention of John F. Miller, and the answer thereto, and the reply to the answer, may be used and treated on the trial of the cause the same as copies duly certified by the clerk of the circuit court.

"At a session of the circuit court of the United States at Omaha, on May 13, 1889, before Hon. Elmer S. Dundy, U. S. district judge, the cause of John F. Miller, plaintiff, against William Groneweg and John Schoentgen, defendants, was heard upon the defendants' petition for the removal of the cause from the district court of the state of Nebraska, for Lancaster county, to the circuit court of the United States for the district of Nebraska, and upon the proofs offered in support thereof, and it having been made to appear that from prejudice and local influence the said defendants will not be able to obtain justice in the court in which this action is pending, or in any other state court to which said defendants may on account of such prejudice or local influence have a right under the laws of the state of Nebraska to remove this cause, and it further appearing that this suit is one properly removable under

the acts of the congress of the United States to the said circuit court, it is hereby ordered that the said suit be, and the same hereby is, removed from the said state district court of Nebraska within and for the county of Lancaster into the circuit court of the United States for the district of Nebraska."

On May 22, 1889, there was a trial in the court below to a jury and verdict for the plaintiff for $1,780, with judgment for that sum and costs, $41.15.

Subsequently the defendants filed their motion to vacate the judgment, set aside the verdict, and grant a new trial for the reasons:

I. Because the verdict is not sustained by the evidence and the law in the case, and was rendered by the jury without authority to render it, because the court was without jurisdiction to try the cause at the time it was tried.

II. Because the verdict is contrary to law, the court and jury being without jurisdiction to try the cause and render the verdict.

III. Because of error at law occurring at the trial and excepted to by defendants, and especially because the court had no jurisdiction of the cause or right to try it at the time of trial, which motion was heard and overruled.

The plaintiffs in error assign the following causes for review:

I. The district court was without jurisdiction to try the cause.

II. The court erred in overruling defendants' objection to the trial of the cause prior to the trial and to the impaneling of the jury.

III. The court erred in overruling defendants' objection to the introduction of evidence.

IV. In rendering final judgment in favor of the plaintiff below.

V. In overruling defendants' motion for a new trial.

The above assignments all resolve themselves into a

single proposition of law, to-wit, that the cause having been removed from the district court of the state of Nebraska to the circuit court of the United States, the former tribunal was, at the date of the trial and judgment complained of, without jurisdiction to hear or determine the cause, and therefore said judgment is erroneous. Doubtless if the premises be true both in fact and in law, the conclusion follows. If the action had been, pursuant to the law of the land, removed from the district court, then its judg- ment is void and should be reversed. But it is quite conceivable that certain forms of law may have been gone through with for the purpose of removing said cause, and the circuit court may have assumed jurisdiction of it when in law the case remained with the district court, and this is the case whatever steps were taken, if the cause is not one of those of which the circuit court of the United States has jurisdiction under the law, and the removal of which from the state to the federal courts has been provided for by law, and that it is not, is the contention of the defendants in error.

In disposing of the case I will give the act of congress of March 3, 1887, such examination as is deemed necessary in order to express my views of its application to the case at bar, but will make no attempt to reconcile the conflicting opinions of the courts in respect thereto. The title of the act is "An act to amend the act of congress approved March 3, 1875; entitled 'An act to determine the jurisdiction of the circuit courts of the United States and to regulate the removal of causes from state courts and for other purposes, and to further regulate the jurisdiction of circuit courts of the United States and for other purposes.'" By the act of which this is amendatory it was provided that the circuit courts of the United States should have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeded, exclusive of

costs, the sum or value of five hundred dollars and arising under the constitution or laws of the United States, or treaties made or which should be made under their authority, or in which the United States were plaintiffs or petitioners, or in which there should be a controversy between citizens of different states. By the amendatory act it is provided that the circuit courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, and arising under their authority, or in which controversy the United States are plaintiffs or petitioners, or in which there shall be a controversy between citizens of different states, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid.

It clearly appears from the language of the first section of the amendatory act that where there is a controversy between citizens of different states, the circuit court of the United States has jurisdiction, provided the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, and it is as certain, although not expressed in words, that such court has not jurisdiction if the matter in controversy, exclusive of costs, does not exceed the sum or value of two thousand dollars. It is equally certain from the reading of the first section that the matter in controversy shall exceed, exclusive of interest and costs, the sum or value of two thousand dollars, as it is that the controversy must be between citizens of different states. The jurisdiction of the federal court is as much dependent upon one of the facts as it is upon the other; in the absence of either that court has not jurisdiction of the cases mentioned in the third provision of the first section of the amendatory act. In the enactment of the amendatory law the intent of congress was to raise the minimum sum or value of the matter in dis-

pute from five hundred dollars, exclusive of costs, to two thousand dollars, exclusive of interest and costs.

The second section of the amendatory act provides:

"That any suit of a civil nature, at law or in equity, arising under the constitution or laws of the United States, or treaties made, or which shall be made under their authority, of which the circuit courts of the United States are given original jurisdiction by the preceding section, which may now be pending, or which may hereafter be brought in any state court, may be removed by the defendant or defendants therein to the circuit court of the United States for the proper district. Any other suit of a civil nature, at law or in equity, of which the circuit courts of the United States are given jurisdiction by the preceding section, and which are now pending, or which may hereafter be, brought in any state court, may be removed into the circuit court of the United States for the proper district by the defendant or defendants therein, being non-residents of that state. And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the circuit court of the United States for the proper district. And where a suit is now pending, or may be hereafter brought in any state court in which there is a controversy between a citizen of the state in which the suit is brought, and a citizen of another state, any defendant, being such citizen of another state, may remove such suit into the circuit court of the United States for the proper district at any time before the trial thereof, when it shall be made to appear to said circuit court that from prejudice or local influence he will not be able to obtain justice in such state court, or in any other state court to which said defendant may under the laws of the state have the right, on account of such prejudice or local influence, to remove said cause."

Under this section it is claimed that a defendant may, where there is a controversy between citizens of different states, remove a pending cause into the circuit court of the United States for the proper district, regardless of the sum or value of the matter in dispute. That no application for a removal need be made to the state court, and that no petition for a removal need be filed in the state court, and that no bond is required of the party removing.

It is clear that under section 2 of the amendatory act only those suits are removable to the federal court of which that court was given jurisdiction by the preceding section (section 1 of the amendatory act). In other words, only such suits can be removed into the circuit courts as could originally have been commenced there. The clause of section 2, which authorizes a defendant to remove a suit into the circuit court on account of prejudice or local influence, simply gives the right of removal at any time before the trial and dispenses with petition and bond, while in other cases of removal the petition or application therefor must be filed in the state court at or before the time that the defendant is by the state law or rule of the state court required to answer or plead. But this clause of the second section is to be construed with the preceding clause of the same section, which requires, as a prerequisite to removal, that the matter in dispute shall exceed the specified amount.

In the enactment of this amendatory act congress evidently had in view the fact that if a party desired to remove a case on the ground of citizenship alone he could as well make his application therefor on or before the answer day as thereafter, but that he might not be aware of the existence of prejudice or local influence which would prevent his obtaining justice in the state courts, until after issues were joined, and hence a party who might be willing to litigate in the state courts provided he could obtain justice therein, if he afterwards and before the trial was able

to make it appear that on account of prejudice or local in-
fluence he could not obtain justice in any state court, should
have the right to remove the case into the federal court at
any time before the trial; but a reasonable interpretation
of the statute does not lead to the conclusion that a de-
fendant could remove a case where the amount in contro-
versy did not exceed two thousand dollars; and hence of
a class of cases of which jurisdiction had not been con-
ferred upon the federal courts.   It is the first section alone
of the amendatory act which gives the federal court juris-
diction; the second and third sections simply provide the
manner in which causes shall be brought within that juris-
diction.   Had it been the intent of congress to authorize
a defendant to remove a suit in which was involved less
than the prescribed amount, the first section of the act, the
section giving jurisdiction, would have conferred upon the
circuit courts of the United States jurisdiction, concurrent
with the courts of the several states, of all suits of a civil
nature, at common law or in equity, in which there was a
controversy between a citizen of the state in which the
suit was brought and a citizen of another state, without
regard to the sum or value of the matter in controversy,
whenever it should be made to appear to said circuit court
that the defendant in such suit, not being a citizen of the
state where the suit is brought, could not, on account of
prejudice or local influence, obtain justice in any state court.
That congress did not, in terms, confer such jurisdiction
regardless of the amount involved argues strongly against
the contention that a defendant may under the last clause
of the second section remove a suit into the federal court
regardless of the amount involved.

The position that the last clause of section 2 relates
merely to the time when the defendant may make his ap-
plication for removal, and dispenses with the petition or
bond, is strengthened by the first part of section 3, which
reads as follows: "Sec. 3. That whenever any party entitled

to remove any suit mentioned in the next preceding section, except in such cases as are provided for in the last clause of said section, may desire to remove such suit from a state court to the circuit court of the United States, he may make and file a petition in such state court at the time, or any time before the defendant is required by the laws of the state or the rule of the state court in which such suit is brought to answer or plead to the declaration or complaint of the plaintiff, for the removal of such suit into the circuit court to be held in the district where such suit is pending, and shall make and file therewith a bond, with good and sufficient surety for his or their entering in such circuit court on the first day of its then next session a copy of the record in such suit, and for paying all costs that may be awarded by the said circuit court if said court shall hold that such suit was wrongfully or improperly removed thereto, and also for their appearing and entering special bail, if special bail was originally requisite therein."

It thus appears from the third section that in all cases, except those mentioned in the last clause of section 2, viz., "those where the defendant may remove on the ground of prejudice or local influence, the party entitled to remove must file his petition on or before the answer day, and must file therewith the prescribed bond; while in the cases mentioned in the last clause of the second section the application for removal may be made at any time, and the cause may be removed at any time before trial, provided it be made to appear to the circuit court that by reason of prejudice or local influence the defendant will not be able to obtain justice in the state courts. Before it can be held that the purpose of congress was to confer upon the federal courts jurisdiction of suits between citizens of different states, regardless of the sum or amount in controversy, under a statute the first section of which confers such jurisdiction, there must be something in the section which confers jurisdiction showing that intent. There being, as

Bierbower v. Miller.

I conceive, nothing either in the letter or spirit of the statute, I conclude that no such jurisdiction was conferred.

The act of September 24, 1787, conferred jurisdiction "of all suits of a civil nature, at common law or in equity, where the matter in dispute, exclusive of costs, exceeds the sum or value of five hundred dollars, and an alien is a party, or the suit is between a citizen of the state where the suit is brought and a citizen of another state." This provision remained undisturbed until the passage of the act approved March 3, 1875, in which act jurisdictional language somewhat different is used, but so far as the limitation of such jurisdiction to suits where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars is concerned, it is substantially the same. And the act of 1875 contains a repealing clause by which all acts and parts of acts in conflict with the provisions of said act are thereby repealed. The act of March 3, 1887, is, as we have seen, amendatory of the act of 1875, and its provisions, including the jurisdictional clause, are made expressly to take the place of the provisions of said act. So that, as I conclude, there is no act of congress now in force conferring jurisdiction upon the circuit court unaccompanied by the limitation of two thousand dollars.

It is probably unnecessary here to meet the possible objection that the judicial power of the United States, having been declared by the 1st clause, 2d section, of 3d article of the constitution of the United States, to "extend to  *   * controversies  *   *   * between citizens of different states," that jurisdiction exists in the circuit court by virtue of that instrument. This question was before the supreme court of the United States in the case of *Sheldon v. Sill,* 49 U. S., 440, where it was expressly held that (I quote the syllabus): "Courts created by statute can have no jurisdiction but such as the statute confers." The circuit court of the United States, thus having been created by act of congress, received and retains its jurisdiction in such terms and

12

with limitations as congress has expressed and imposed. The circuit court therefore being without jurisdiction to order the removal of the cause from the district court of this state to the circuit court of the United States for the district of Nebraska, for the reason that the matter in dispute did not exceed, exclusive of interest and costs, the sum or value of two thousand dollars, the district court of this state was not divested of jurisdiction to hear and determine said cause, notwithstanding the record presented in the case.

The judgment of the district court is

AFFIRMED.

NORVAL, J., concurs.

MAXWELL, J., dissenting.

I concur in the opinion of Judge COBB so far as the points stated in the syllabus are involved. I am unable, however, to agree with him that the petition for removal on the ground of bias or prejudice is to be filed in the federal court. We must remember that the state and federal courts are of concurrent jurisdiction in cases where the defendant is a non-resident of the state and the amount involved, exclusive of interest and costs, exceeds the sum of $2,000. In such case the defendant may remove the case into the federal court. Ordinarily his petition must be filed before the time to answer. In case of alleged bias or prejudice, however, he may file the petition at any time before trial. And this in my view is the exception in the third section of the act—that is, that in all cases except those where bias or prejudice are shown the petition must be filed before the answer day, while in cases of alleged bias or prejudice it may be filed at any time before the trial. If the petition shows a *prima facie* case for removal, the state court should, and, so far as I am advised, invariably has ordered the cause removed.

If the plaintiff disputes the charge of bias or prejudice he may then appear in the federal court and contest the charge. In this respect the act of 1887 differs from that of 1867. Under the former act, upon the proper affidavit being filed in the state court, although false in fact, the case was ordered removed. Under the present statute, however, it requires more than a *prima facie* case to justify the retention of the case by the federal court. There must in fact be bias or prejudice shown so that it would prevent a fair trial.

The mere fact of a petition being filed in the state court and the cause ordered removed, will not prevent the plaintiff from appearing in the federal court and contesting the truth of the charge. The language of the statute is somewhat vague, but this is the evident purpose. The object of the statute was to restrict the right of removal, not to extend it, and this fact must be kept in view. In other words, the act is not remedial in the sense of extending the jurisdiction of the federal courts, but was intended to curtail such jurisdiction. It does not create a new mode of removal, but in many respects limits the old.

Section 61 of the Code of Civil Procedure provides: "That in all cases in which it shall be made to appear to the court that a fair and impartial trial cannot be had in the county where the suit is pending, or where the judge is interested or has been of counsel in the case or subject-matter thereof, or is related to either of the parties, or is otherwise disqualified to sit, the court may, on application of either party, change the place of trial to some adjoining county wherein such impartial trial can be had; but if the objection be against all the counties of the district, then to the nearest county in the adjoining district." In order to show cause for removal it must be alleged in the petition, and, if denied, proved, that a fair and impartial trial cannot be had in the county where the suit is pending or *other counties in the district;* or, if the objection applies to

all of the counties of the district, then to the nearest county in an adjoining district to which the objection does not apply.

It is of the utmost importance that there should be no clashing of jurisdiction between the state and federal courts. From the necessity of the case the supreme court of the United States is the ultimate arbiter in all cases of doubt, and in its decision the state courts cheerfully acquiesce. It would be a sad spectacle, however, to witness a race between the state and federal courts for the commencement or retention of business in either of said courts. This, no doubt, has been felt by both courts and every effort made to avoid a conflict; and on the part of the state court of this state at least many cases have been surrendered, or rather permitted to be removed, while the papers on their face did not show the right of removal. This, in my view, should not be permitted, as the court should not surrender its jurisdiction except upon a showing that another court is entitled to exercise it. In many cases an improper removal operates as a great wrong upon the party against whom it is made, by subjecting him to great and unnecessary costs.

This is not a question of courtesy between courts, but must be determined by the law as it exists. The prejudice act of 1867 arose out of matters connected with the war; it has never had any solid foundation in this state.

There are twenty-one judges of the district courts of this state. Many of these judges had held important offices of trust and profit for many years before being called to the bench. They are capable lawyers whose integrity is unquestioned. In an equity case how can an affiant swear that these twenty-one judges are biased or prejudiced against *him*? They are men of whom he has no personal knowledge in all probability, and they probably have no knowledge of him whatever.

It is very plain that an oath that they are all biased or

prejudiced against him, borders very closely upon perjury; and even where the oath is predicated upon the prejudice or bias of the people of a particular county, no one can truthfully assert that the people in the more than ninety counties of this state are prejudiced against the affiant.

There are many reasons why the district court should not surrender its jurisdiction until a proper showing is made in that court.   Suppose an action is brought for less than $2,000 and the case is removed into the federal court, and judgment or a decree of foreclosure rendered for a sum less than that fixed by statute authorizing the removal of the cause, how can the validity of such judgment be upheld?   Not by the statute, certainly, for that only authorizes a removal where the amount claimed exceeds $2,000, exclusive, etc.   The effect would seem to be that the decree of foreclosure, or judgment and all the proceedings thereunder, would be null and void.

The supreme court of the United States has held that the circuit court was a court of limited jurisdiction and had cognizance only of a few cases specially circumstanced, and that the fair presumption was that the cause was without its jurisdiction till the contrary appeared. (*Turner v. Bank of North America*, 4 Dallas, 8; *Turner v. Enrille*, Id., 7; *Bingham v. Cabot*, 3 Id., 381.)   Being a court of limited jurisdiction as to parties and amounts, like any other court of that kind, it must act within its powers.   I do not care to make a comparison with other courts of limited jurisdiction where judgments in excess of their powers, as to amounts, have been held to be void; but it is well known that such is the law.   It is necessary, therefore, to set forth in the record the facts and circumstances which give jurisdiction.   The importance of taking the necessary steps to oust the state court of jurisdiction, therefore, plainly appear, and until such steps are taken by filing a proper petition and other papers in the state court, it should proceed with the case.

In *Boyden v. Burke*, 55 U. S., 576, it was held by the

supreme court of the United States that a lawful demand must be made in a respectful manner. Surely the same rule will be applied where it is sought to oust a court having lawful jurisdiction of an action.

More than one hundred years ago the original act for the removal of cause was passed, one of the requisites of which was that a petition showing the necessary facts to entitle the petitioner to remove the cause, together with a bond, should be filed in the state court. This law is still in full force and applies to all cases.

In *Trafton v. Nougues*, 4 Central Law Journal, 230, in a case before the United States circuit court of California, Judge Sawyer says:

"I think it is of the highest importance to the rights of honest litigants, and to the due and speedy administration of justice, that a petition for transfer should state the exact facts and distinctly point out what the question is and how and where it will arise which gives jurisdiction to the court so that the court can determine for itself from the facts whether the suit does really and substantially involve a dispute or controversy properly within its jurisdiction. Whenever, therefore, the record fails to distinctly show such facts in a case transferred to this court it will be returned to the state court."

I fully concur in all that is said above, but unless a *prima facie* case is made for removal, it is the duty of the state court to proceed with the trial, and it should not surrender its jurisdiction unless a proper application is made to it showing the necessary facts for that purpose, while, if a *prima facie* case is made for removal, the cause should be ordered removed.

If upon such petition being filed the state courts refused to transfer the case, there might be a just cause of complaint, but no such case has occurred in this state, so far as this court is advised, and the respect due to the state no less than the federal court requires that the proceedings be conducted in an orderly manner and in conformity to law.